IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-01094-PAB-KLM


TYLER V., by and through his parents and next friends,
DESIREE AND ROBERT V.,

        Plaintiff(s),

v.

ST. VRAIN VALLEY SCHOOL DISTRICT NO. RE-1J,


        Defendant(s).
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

        This matter is before the Court on **Defendant's Partial Motion to Dismiss** [Docket

No. 41; Filed July 3, 2008] (the "Motion").  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.

Colo.LCivR. 72.1.C., the matter has been referred to this Court for recommendation.  The

Court has reviewed the Motion, Plaintiffs' Response [Docket No. 46; Filed August 4, 2008],

Defendant's Reply [Docket No. 50; Filed August 26, 2008], the entire case file, and the

applicable case law.  Further, the Court held a hearing on the Motion on October 24, 2008.

The Court is sufficiently advised in the premises.  Accordingly, the Court respectfully

**RECOMMENDS** that the Motion be **GRANTED**, as set forth below.

## I. Framework of the IDEA

This action was brought pursuant to the Individuals With Disabilities Education Act, 20 U.S.C. §1401, *et seq.* ("IDEA" or the "Act"). The IDEA establishes a process to ensure that the states, through their local school districts, provide a "free appropriate public education" ("FAPE") to school-age children with disabilities. 20 U.S.C. §1412(a)(1)(A). The Act provides for creation of an individualized education program ("IEP") for each disabled student through collaborative efforts of (at least) the student's parents, teachers, and a school district representative. *See* 20 U.S.C. §1414(d)(1)(B). "The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals." *Ass'n for Cmty. Living in Colo. v. Romer,* 992 F.2d 1040, 1043 (10th Cir. 1993); *see* 20 U.S.C. § 1414(d)(1)(A). Pursuant to the statute, the IEP must identify the location where the student's services will be provided during the term of the IEP. *See* 20 U.S.C. §1414(d)(1)(A)(i)(VII).

The IDEA establishes a dispute resolution process for situations where the parents and the school district disagree on provisions of the IEP. *See* 20 U.S.C. § 1415(b)(6)(A) and (f). Colorado has a two-tiered system, as permitted by the Act. The first step in dispute resolution is the filing of a complaint and request for due process hearing, which is presided over by an impartial hearing officer ("IHO"). *Id.* Either party may appeal the IHO's decision to an Administrative Law Judge ("ALJ") employed by the Colorado Office of Administrative Courts. *See* 20 U.S.C. § 1415(g). Once his administrative remedies are

exhausted a party aggrieved by the decision of the ALJ has the right to bring a civil action in federal district court pursuant to 20 U.S.C. § 1415(i)(2)(A).

## II.     History of the Dispute

### A.     Factual Background

Plaintiffs are a school-age child with disabilities, Tyler, and his parents. *Complaint* [#1] at ¶ 1. The family lived outside of Colorado before 2005. *Id.* at ¶¶ 30, 31. After his family moved to Colorado, Tyler was enrolled in 4th grade at Frederick Elementary School for the 2005-2006 school year. Frederick Elementary School is located in the School District. *Id.* at ¶ 32. Tyler's education at Frederick Elementary was pursuant to the terms of an IEP agreed upon by his parents and the School District on August 12, 2005. *Id.* at ¶ ¶ 35, 36.

Tyler's psychologist was concerned that his mental health deteriorated throughout the 2005-2006 school year. *Id.* at ¶ 47 (which mistakenly refers to the 2006-2007 school year). In May of 2006, the psychologist recommended that Tyler be removed from Frederick Elementary and put on a homebound placement for the remainder of the school year. *Id.* at ¶ 48. Later that month, on May 23, 2006, Tyler's IEP team met and agreed that he needed a more therapeutic placement for the 2006-2007 school year. *Id.* at ¶ 50.

During the summer of 2006, counsel for the School District and Tyler's parents discussed various placement options for Tyler for the 2006-2007 school year. The negotiations eventually narrowed to the School District advocating that Tyler be placed at Flatiron Academy, a school available for "contract placement" by the School District, and

the parents advocating that Tyler attend the Western Institute for Neurodevelopmental Studies and Intervention ("WINSi"), a private facility located in Boulder, Colorado. *Id.* at ¶ 57. The parties were not able to agree on a choice between these two options, and in late August of 2006, the parents' counsel notified the School District that they were enrolling Tyler at WINSi. *Id.* at ¶ 62. Tyler began attending WINSi on September 18, 2006. *Id.* at ¶ 69.

Tyler attended WINSi until March 23, 2007, for a total of 26 weeks. *Id.* at ¶ 74. Tyler's parents paid his tuition at WINSi while they began the administrative process necessary to asserting legal claims against the School District under the IDEA.

**B.      Summary of the Administrative Proceedings**

**1.      The Due Process Hearing**

On September 6, 2006, Tyler's parents filed a due process complaint against the District, seeking reimbursement (in advance) for the costs associated with Tyler's enrollment at WINSi and payment for an independent educational evaluation of Tyler previously conducted by Dr. John Kirk. *Id.* at ¶ 18. The due process hearing was held by the IHO on November 7, 8, 13 and 14, 2006. *Id.* at ¶ 19. The IHO received the testimony of thirteen witnesses and numerous exhibits. *Id.* at Ex. 3, p. 1.

The IHO eventually addressed several factual and legal issues which are critical to the present Motion, including:

1. Was . . .FAPE provided by the [School District] to [Tyler] at Frederick Elementary School for the 2005-2006 school year?

2. Was FAPE provided by an IEP to [Tyler] for the 2006-2007 school year

4

by the [School District]?

3.   If not, is the placement of [Tyler] at the Western Institute for Neurodevelopmental Studies and Intervention (WINSi) for the 2006-2007 school year an appropriate placement for his needs?

4.   If the placement at WINSi is found to be appropriate, what should the monetary reimbursement be by the [School District]?

*Id.*

In late November of 2006, the IHO issued his decision.  Importantly, he concluded that the School District had <u>not</u> provided FAPE to Tyler after the IEP meeting of May 23, 2006, including for the 2006-2007 school year, which was then approximately one-third over.  The IHO held:

Thus, it is the opinion of the IHO that the [School District] and its highly qualified and dedicated staff of teachers and support efforts did provide FAPE during the 20044-2005 [sic] school year[1].  However, FAPE was no longer provided after the IEP meeting of May 23, 2006, and subsequently on to the present.  However [sic], the events of the May 23, 2006, IEP meeting and events which transpired subsequent to that meeting show that FAPE has not been provided to the student for the 2006-2007 school year.

*Id.* at 11.  The IHO further found that Tyler's placement at WINSi was "proper under IDEA since at WINSi he is being provided with a proper individualized education plan under, for him, the least restrictive environment."  *Id.* at 12.  The IHO also concluded that the School District had provided FAPE to Tyler for the previous school year, 2005-2006, via the August 12, 2005 IEP.  *Id.*  He ordered the District to pay a maximum ("if necessary") of 36 weeks of tuition at WINSi at the cost of $1800 per week, plus $1814.40 in transportation costs and

---

[1] This error in the school year dates was corrected in the IHO's "Conclusions of Law," which read in pertinent part: "Accordingly, the [School District] provided FAPE to [Tyler] at Frederick Elementary School for the 2005-2006 school year." *Complaint* [#1] at Ex. 3, p. 12.

$16,000 in follow-up care.  *Id.*  The IHO further ordered that the School District convene an

IEP meeting "as soon as possible to attempt to find a more reasonable alternative to WINSi

. . . ."  *Id.* at 13.  The IHO specified that the District's funding of the WINSi tuition and follow-

up care would be "terminated as soon as a new IEP is generated if the IEP finds them

unnecessary." *Id.*

## 2.    The Administrative Appeal

In December of 2006, both parties separately appealed the IHO's order to an ALJ.

*Id.* at ¶ 22.    According to the ALJ's eventual written decision, "the School District

appeal[ed] the decision of the IHO to require it to pay for [Tyler's] education at . . . WINSi

*for all or a portion of the 2006-2007 school year."  Id.* at Ex. 1, p. 2 (emphasis added).

According to the Complaint, the parents "appealed the fact that while the IHO held that the

District denied Tyler FAPE for the 2006-2007 school year, the IHO [also] held that the

District provided FAPE during the 2005-2006 school year. Finally, the parents appealed the

IHO's order that the parties attend an IEP meeting to consider whether the placement at

WINSi was reasonable since. . .that was an issue of law that the IHO had already decided

in their favor."  *Id.* at ¶ 22.

The second step of the administrative process was based on the record compiled

at the Due Process Hearing, as the parties agreed that no new evidence would be

presented to the ALJ.  *Administrative Record* [#22] at 202.  The ALJ gave deference to the

IHO's findings of fact and accorded his decision "'due weight,' while reaching an

independent decision based on a preponderance of the evidence." *Complaint* [#1] at Ex.

1, p. 1.

On January 3, 2007, prior to reaching his decision on appeal, the ALJ held a status conference to address several administrative issues. *Id.* at 22. During that status conference, the parties "disclosed that the new IEP meeting [pursuant to the IHO's Order] was scheduled for January 11, 2007. The parties disagreed as to whether the IHO's decision required continued payment for education at WINSi if a new IEP could not be reached [on] January 11. The ALJ issued a written order dated January 3, 2007 holding that the IHO's decision did not cover this issue, and [further declining] to order the School District to pay for [Tyler's] education at WINSi past January 11, 2007." *Id., Administrative Record* [#22] at 202. Indeed, the ALJ's written order of January 3, 2007 specified that he could not "properly consider issues decided or not decided at the January 11, 2007 meeting, however, as they are outside the IHO's decision and would be the basis for a separate appeal." *Complaint* [#1] at Ex. 1, p. 22. The ALJ further ordered the School District to make an interim payment to the parents for a portion of the WINSi tuition and other costs awarded by the IHO. The District paid the parents $28,634.40 on January 11, 2007, pursuant to the ALJ's Order. *Complaint* [#1] at ¶ 24.

Pursuant to the IHO's Order, on that same date the parents and the School District attended an IEP meeting to discuss Tyler's IEP for the 2006-2007 school year, despite the fact that the year was half over. *Id.* at ¶ 25. The "IEP team was not able to reach a consensus on whether Tyler should continue attending WINSi for the remainder of the 2006-2007 school year." *Id.* Although Tyler's counsel later informed the ALJ in a brief that

the January 11, 2007 IEP meeting had resulted in an impasse, the ALJ found that "this information is not part of the evidence, [thus] no finding of fact may be made regarding this information." *Id.* at Ex. 1, p. 22, n.2.

After the parties' failure to agree on a new IEP, Tyler continued at WINSi for another ten weeks, approximately four weeks of which occurred after the ALJ reversed the IHO's Order that the District was required to pay for Tyler's education at WINSi. *Id.* at ¶ 26. On February 27, 2007, the ALJ found that the District had provided FAPE to Tyler in *both* the 2005-2006 and 2006-2007 school years, and that the District was not required to pay for Tyler's education at WINSi. *Id.* at Ex. 1, p. 25.

The issue presently before the Court is Defendant's Partial Motion to Dismiss [#41], which asserts that the Court lacks subject matter jurisdiction over certain of Plaintiffs' "claims" due to their failure to properly exhaust their administrative remedies prior to commencement of this litigation.

III.    **Defendant's Partial Motion to Dismiss**

In support of its Partial Motion to Dismiss, the School District argues that the Court does not "have subject matter jurisdiction over Plaintiffs' newly-asserted claims alleging denial of FAPE for the 2006-2007 school year or denial of FAPE based upon [Tyler's] placement at Burlington Elementary School at the January 11, 2007 IEP meeting. Plaintiffs did not exhaust administrative remedies regarding these claims." *Motion* [#41] at 5. The School District also argues that Plaintiffs' "claims" relating to the School District's alleged failure to provide prior written notice of Tyler's placement for the 2006-2007 school year

and for reimbursement of money paid by Plaintiffs to WINSi *after* the January 11, 2007 IEP meeting have not been properly exhausted. *Id.* at 12.

In their response to the Motion, Plaintiffs assert that they have not brought any claim based upon denial of FAPE to Tyler for the 2006-2007 school year. *Response* [#46] at 4. Plaintiffs further assert that they do not claim that the School District denied Tyler FAPE based on any failure to provide prior written notice regarding Tyler's placement for the 2006-2007 school year. *Id.* Instead, as part of their recitation of facts in support of their claims, they simply alleged that the School District never made a formal IEP offer or provided prior written notice of placement to Tyler in the summer of 2006. *Id.* at 4-5. Finally, the Plaintiffs allege that they are not challenging the IEP created by the School District on January 11, 2007. Instead they contend that they are seeking to restore the IHO's Order that the School District must pay for 36 weeks of program fees at WINSi because Tyler did not make progress under the 2005-2006 IEP. *Id.* at 3.

IV.    **Analysis**

   A.    **Legal Standards Applicable to Plaintiff's Claims**

      1.    **Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

Subject matter jurisdiction is the Court's authority to hear a case and cannot be waived. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss pursuant

to Rule 12(b)(1) may take two forms.  First, if a party attacks the facial sufficiency of the complaint, the Court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).

Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the Court may make its own findings of fact.  *See Holt*, 46 F.3d. at 1003.  "In a factual attack . . . the movant goes beyond the allegations in the complaint and challenges facts upon which subject matter jurisdiction depends."  *Id.* at 1002.  Further, "[w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations."  *Id.*  A Court's consideration of evidence outside the pleadings, including affidavits, will not convert the motion to dismiss to a motion for summary judgment under Rule 56.  *Id.*  This case involves the second type of 12(b)(1) motion in that Defendant "goes beyond the allegations in the complaint and challenges facts upon which subject matter jurisdiction depends."  *Id.*[2]

---

[2] The Court is aware that the Tenth Circuit has expressed doubt as to whether the exhaustion requirement under the IDEA is jurisdictional.  *McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007).  The Tenth Circuit held that it need not decide whether the exhaustion issue is jurisdictional when it has not been waived or forfeited due to a party's failure to assert it.  *Id.*  Because there is no assertion of waiver or forfeiture in the case at bar and because other Courts have determined the issue pursuant to Rule 12(b)(1), the Court elects to do so here. *Ellenburg v. New Mexico Military Inst.,* 478 F.3d 1262, 1279 (10th Cir. 2007); *Hayes v. Unified Sch. Dist. No. 377,* 877 F.2d 809, 813 (10th Cir. 1989).

**B.      Failure to Exhaust**

**1.      Exhaustion Requirements**

It is well established that failure to exhaust administrative remedies pursuant to the IDEA requires dismissal of the complaint or claim at issue.  *See Honig v. Doe*, 484 U.S. 305, 326-27 (1988); *Ellenburg*, 478 F.3d at 1279; *Hayes*, 877 F.2d at 813.  That is, "[a]s part of the bargain of providing children with education rights and parents with procedural safeguards to protect those rights, Congress required that parents turn first to the statute's administrative framework to resolve any conflicts they had with the school's educational services."  *Ellenburg*, 478 F.3d at 1275 (citations omitted).  In *Ellenburg*, the Tenth Circuit interpreted the exhaustion requirement "broadly," observing that the clear intent of Congress was to allow those with experience in education of the nation's disabled children "at least the first crack in formulating a plan to overcome the consequences of educational shortfalls."  *Id.* (citing *Cudjoe ex rel. Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1065 (10th Cir. 2002)).

Caselaw has clearly articulated the objectives behind the exhaustion requirement, but is less developed regarding the scope or depth of administrative review necessary to properly frame issues for the District Court.  The objectives behind the administrative exhaustion requirement are:

> (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

11

*McQueen*, 488 F.3d at 873. However, aside from authority establishing that the full administrative process must be "completed" in order for a party to have properly exhausted claims under the IDEA, applicable caselaw provides little guidance as to the actual scope of administrative review necessary to proper exhaustion of a claim under the Act. *Id.* at 874. In order for the administrative process to be deemed "complete" for purposes of exhaustion, it must address the specific child's "condition or needs" with respect to his or her education. *Id.* Beyond that baseline requirement, caselaw does not appear to address the finer points regarding creation of the administrative record in order to properly exhaust claims before their presentation to the District Court.

Despite the lack of detailed authority exploring the prerequisites for exhaustion under the IDEA, the line of cases culminating in the Tenth Circuit's decision in *McQueen* establishes that exhaustion is a function of the combined operation of three separate but related parts of the mandatory administrative procedure: (1) the assertion of proper legal claims and defenses by the parties under the Act; (2) the presentation of evidence supporting those claims and defenses; <u>and</u> (3) the issuance of rulings by the fact-finders relating to those claims and defenses. *See, e.g., McQueen*, 488 F.3d at 873, *Cudjoe ex rel. Cudjoe*, 297 F.3d at 1064-65, *Ass'n for Cmty. Living*, 992 F.2d at 1044. An administrative record which does not contain each of these components with respect to each claim or defense fails to meet the exhaustion objectives of the IDEA.

### 2. Claim Regarding Prior Written Notice Pursuant to 20 U.S.C. § 1415(c)(1)

A portion of the School District's Motion can be resolved perfunctorily, as Plaintiffs'

12

most recent clarification of their claims leaves no doubt that the notice issue is not before

the Court.   More specifically, Plaintiffs summarize the three claims brought in their

Complaint as follows:

> The <u>First Claim for Relief</u> seeks to overturn the ALJ's holding that Tyler
> received FAPE during the 2005-2006 school year despite his holding that
> Tyler received no academic or non-academic benefits from his August 12,
> 2006 [sic] IEP.
>
> The <u>Second Claim for Relief</u> seeks to restore the IHO's order that the District
> should fund Tyler's placement at WINSi for up to 36 weeks, pursuant to the
> private placement test set out in 34 C.F.R. § 300.148(c).
>
> The <u>Third Claim for Relief</u>, which is not relevant to the District's Motion to
> Dismiss, concerns the Parents' claim for reimbursement for the independent
> educational evaluation.

*Response* [#46] at 3 (emphasis and spacing added and internal citations omitted).  As set

forth above, Plaintiffs' own description of their claims does not assert any claim that the

District denied Tyler FAPE based upon failure to provide prior written notice pursuant to 20

U.S.C. § 1415(c)(1).  *Id.* at 4-5.  Thus, the first part of the exhaustion test set forth above

has not been met.  Considering Plaintiffs' concession on this point, Defendant's Motion to

Dismiss should be granted regarding this purported "claim."

Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss [#41] be

**GRANTED** with respect to Plaintiffs' alleged "claim" that the School District failed to provide

prior written notice pursuant to 20 U.S.C. § 1415(c)(1) of its proposal to change Tyler's

placement or its refusal to do so, because no such claim was made at the administrative

level nor has it been made in this Court.

### 3.    Claim for Reimbursement of WINSi Fees

Plaintiffs' claim for reimbursement of WINSi fees, as set forth in their Second Claim for Relief, presents a more complex issue. The School District argues that Plaintiffs are precluded from asserting any "claim" that the School District denied Tyler FAPE in the 2006-2007 school year, or that the School District denied Tyler FAPE by "placing" him at Burlington Elementary after the January 11, 2007 IEP meeting, or that the School District should reimburse Plaintiffs for money paid to WINSi after that January 11, 2007 IEP meeting, all because Plaintiffs have failed to exhaust their administrative remedies with respect to these "claims." *Motion* [#41] at 5.

Plaintiffs assert that their claim for 36 weeks of WINSi fees is based on Tyler's failure to receive FAPE pursuant to the *2005-2006* IEP. *Response* [#46] at 4 (emphasis provided). Plaintiffs state that the IHO required the School District to reimburse the parents for the costs of WINSi they had already incurred at the time of his Order, and to pay those costs going forward. *Id.* at 7 According to the parents, the IHO ordered the WINSi payments to be terminated only if the IEP team subsequently found them to be unnecessary. *Id.* The parents contend that the IEP team did not subsequently find the WINSi costs to be unnecessary, because no consensus was reached on the issue at the IEP meeting of January 11, 2007. *Id.* at 8. Thus, the parents conclude, the IHO's Order should have remained in effect, and the School District should be required to reimburse the parents for 36 weeks of WINSi fees. *Id.* at 9.

### i. Did Plaintiffs Properly Assert the WINSI Reimbursement Claim?

First, pursuant to the exhaustion test set forth above, the Court must determine

14

whether Plaintiffs properly asserted a claim for reimbursement of the WINSi fees during the administrative process. Reduced to its core, Plaintiffs' contention appears to be that the IHO ordered the School District to pay for WINSi because FAPE wasn't provided to Tyler in *2005-2006*. Noticeably absent from the entire administrative record, and from Plaintiffs' attempt to clarify their claims in this Court, is the contention that the School District denied FAPE to Tyler for the *2006-2007* school year. Indeed, in their Response to the Motion, Plaintiffs expressly aver that they have not brought any claim based upon denial of FAPE to Tyler in 2006-2007. *Response* [#46] at 4. Plaintiffs do not deny that their Second Claim for Relief requests that the Court reinstate the IHO's order that the School District should reimburse the parents for thirty-six weeks of Tyler's program fees at WINSi because of his lack of progress under the *2005-2006* IEP. *Id.* at 5.

It is necessary to provide a more detailed recitation of the events which occurred in the summer of 2006 in order to properly frame the legal issue at the heart of Plaintiffs' reimbursement claim. The parties agree that Tyler's WINSi fees were incurred during the 2006-2007 school year, which began in August of 2006. They also agree that they failed to reach consensus on an IEP for that year at the end of the previous school year (in May of 2006). In May, the School District prepared a draft IEP for Tyler for the 2006-2007 school year, and the parties agreed that Tyler needed "more therapeutic services" starting in the fall. *Administrative Record* [#22] at 215. The attorneys for both sides met to discuss the school site for implementation of the 2006-2007 IEP, and the District provided five options (four of which were ultimately determined to be available to Tyler based on his age)

for the parents' consideration. The parties "negotiated" about Tyler's future school placement over the summer of 2006. *Id.* at 216. Dr. Kirk, the psychologist hired by Tyler's parents, suggested WINSi to Tyler's mother in late June of 2006. *Id.* at Plaintiffs' Ex. 35. Plaintiff's attorney notified the School District of Dr. Kirk's recommendation in July of 2006. *Id.* On August 21, the School District's attorney notified the parents' attorney that Tyler was expected to attend Flatiron Academy, one of the previously suggested options. *Id.* at Plaintiffs' Ex. 36. By letter sent later that day, the parents' attorney notified the School District that the parents rejected the School District's recommended placement for Tyler and were instead placing Tyler at WINSi. *Id.* at Plaintiffs' Ex. 15. According to the letter, they did so "in light of the St. Vrain Valley School District's failure to provide Tyler a free appropriate public education while he was enrolled at Frederick Elementary School [in 2005-2006] and in light of the school district's failure to propose an appropriate alternative placement [for 2006-2007]." *Id.* This letter contains the final argument by the parents in the administrative record that the School District failed to comply with the Act in relation to the 2006-2007 school year. As set forth in more detail below, after this date, the parents argued that the School District was obligated to reimburse Tyler's WINSi costs solely because of its failure to provide FAPE to Tyler for the previous school year, 2005-2006.

Despite the parents' reliance on the School District's alleged failure to provide FAPE to Tyler in 2005-2006 as the basis for their request for reimbursement by the School District, both the law and common sense dictate that the central issue in this dispute is whether the School District offered to provide FAPE to Tyler *for the 2006-2007 school year*.

First, it would be illogical to base the reimbursement decision solely on the events of the 2005-2006 school year, as doing so would ignore the creation of a proposed IEP for 2006-2007, as well as the parties' actions in the summer of 2006 regarding a placement for Tyler for that school year.  Basing the reimbursement claim on the previous school year's IEP and on whether FAPE was provided for that year ignores subsequent critical events which occurred pursuant to the Act.  Logic dictates that these events are relevant to the reimbursement issue and should be considered.  After all, Tyler's parents unilaterally decided to enroll him at WINSi at the end of the summer of 2006, not in May of 2006. Second, the Act expressly provides that a school district is only obligated to reimburse parents of a disabled child "if the court or hearing officer finds that the [school district] had not made a free appropriate public education available to the child in a timely manner prior to that enrollment."  20 U.S.C. § 1412(a)(1)(C)(ii).  The statute's use of the words "in a timely manner prior to that enrollment" mandates consideration of *all* actions taken to offer to provide FAPE before enrollment for the school year at issue, not just those actions taken relating to the previous school year.  *Id.*  Third, the Courts have uniformly interpreted the Act to require a showing that FAPE was denied for the year in which the private enrollment occurred.  *See, e.g., School Comm. of Burlington v. Dep't of Educ. of Massachusetts,* 471 U.S. 359 (1985)*; Thompson R2-J Sch. Dist. v. Luke P.,* 2007 WL 1879981, at *6 (D. Colo. June 28, 2007)* (unpublished decision).  Although the issue of whether FAPE was provided in 2005-2006 provides necessary background for the IEP discussions that occurred during the summer of 2006 related to the 2006-2007 school year, that issue is not determinative

of whether the parents should be reimbursed for education expenses incurred in 2006-2007. The reimbursement issue, as the courts have repeatedly held, is dependent upon whether the School District offered FAPE to Tyler for the school year in which his parents chose not to enroll him at the District but instead to place him outside of it. *See, e.g., Sytsema ex rel. Sytsema v. Academy Sch. Dist. No. 20,* 538 F.2d 1306, 1314 (10th Cir. 2008). Moreover, it is beyond dispute that the parents bore the burden of proof on this issue. *Thompson R-2 Sch. Dist.v. Luke P.,* 540 F.3d 1143, 1148 (10th Cir. 2008).

As indicated above, throughout this dispute the parents have based their claim for reimbursement of WINSi expenses on their allegation that the School District denied FAPE to Tyler in 2005-2006. The record is replete with examples of instances in which the Plaintiffs expressly directed the fact-finders away from any consideration of FAPE in 2006-2007. A thorough review of the record, as set forth below, leads to the inescapable conclusion that the Plaintiffs never asserted that the School District denied Tyler FAPE in 2006-2007. As a result, because pursuit of that claim is a necessary prerequisite to their request for reimbursement of private placement fees for the same year, the parents have not met the first part of the exhaustion test set forth above.

Regarding whether Plaintiffs asserted that the School District failed to offer or provide FAPE to Tyler in 2006-2007, the Administrative Record reveals the following:

- Although Plaintiffs' Due Process Complaint asserted that their "claim for private reimbursement arose on approximately August 21, 2006, when the School District communicated its refusal to consider a placement that would meet Tyler's academic and mental health needs," they further asserted that the School District was responsible for the cost of WINSi "since the district failed to provide Tyler with

FAPE at Frederick Elementary School." *Administrative Record* [#22] at 716. The Due Process Complaint reflects Plaintiffs' on-going theme that the events of May through August of 2006, insofar as they related to the parties' attempts to refine the IEP and find another placement for Tyler besides WINSi, could be ignored.

• The IHO's Supplemental Pre-Hearing Order, dated November 1, 2006, listed the "issues determined to be decided in this matter" as including whether "FAPE [was] provided by [the School District] to the student in the 2005-2006 school year," but not including any issue relating to FAPE in the 2006-2007 school year. *Id.* at 685.

• The School District conceded, in its Pre-Hearing Brief filed with the IHO, that the issue with respect to Plaintiffs' claim for reimbursement for WINSi was whether FAPE was provided to Tyler in 2005-2006. *Id.* at 644-648.

• During the Due Process Hearing, Plaintiffs' counsel omitted any mention of denial of FAPE in 2006-2007 from her statement of the issues. In addition, she conceded that Plaintiffs bore the burden of proof with respect to their claims. *Id.* at Transcript, p. 8-12.

• During the Due Process Hearing, Plaintiffs' counsel's closing argument made no mention of the issue relating to whether the School District had offered to provide FAPE to Tyler in 2006-2007. Plaintiffs' argument centered on the issue of whether the School District had provided FAPE in 2005-2006 and whether WINSi was an appropriate placement for Tyler for the following school year. *Id.* at 842-861.

• Plaintiffs' Proposed Findings of Fact, Conclusions of Law and Order submitted to the IHO contained a proposed conclusion of law regarding the denial of FAPE to Tyler in 2005-2006, but no conclusion of law addressing whether FAPE was offered or provided in 2006-2007. *Id.* at 638.

• The IHO evidently concluded that despite the parties' focus on whether FAPE was provided to Tyler in 2005-2006, he nevertheless was required to also address the issue of whether FAPE had been offered in 2006-2007. The "Issues To Be Determined" section of his Final Order dated November 27, 2006, unlike the Supplemental Pre-Hearing Order, explicitly listed whether "FAPE was provided by an IEP to the Student for the 2006-2007 school year...". *Id.* at 516. The IHO

further found that "the events of the May 23, 2006, IEP meeting and events which transpired subsequent to that meeting show that FAPE has not been provided to the student for the 2006-2007 school year." *Id.* at 526.

- The School District argued, on appeal to the ALJ, that "the IHO erred in considering FAPE during the 2006-2007 school year when the issue was outside the scope of issues to be determined during the hearing and in contravention of [the Act]." *Id.* at 477. The School District continued to contend that Plaintiffs only had to prove denial of FAPE in 2005-2006 in order to obtain reimbursement of Tyler's WINSi fees, and accused the IHO of unilaterally and erroneously adding the issue regarding FAPE in 2006-2007 to the proceedings. *Id* at 441-444.

- In their Notice of Cross-Appeal to the ALJ, Plaintiffs again failed to assert any issue regarding denial of FAPE to Tyler in 2006-2007. *Id.* at 61-62.

- In the School District's Brief on Appeal, it again argued that the IHO erred by considering the FAPE issue for 2006-2007. *Id.* at 219.

- Plaintiffs' Brief on Appeal made no mention of the issue of whether FAPE was offered to Tyler in 2006-2007. *Id.* at 239-296.

- Plaintiffs' Response Brief on Appeal contained their first substantive attempt to address the question of whether proof relating to the 2006-2007 FAPE issue was necessary to their effort to obtain an order directing the School District to reimburse the parents for WINSi fees. Plaintiffs addressed the issue in their Response Brief because the School District argued that the IHO had erred in making findings regarding FAPE in 2006-2007. In response, Plaintiffs argued that although the IHO's Final Order referred to a denial of FAPE in 2006-2007, the evidence he considered related to events during the summer of 2006, which was actually part of the 2005-2006 school year. *Id.* at 358. Plaintiffs further argued that they were entitled to reimbursement of the WINSi costs because the School District violated IDEA by failing to convene an IEP meeting after May 23, 2006. *Id.* However, Plaintiffs admitted that all discussions between them and the School District, beginning with the May 23, 2006 IEP meeting, concerned Tyler's placement for *2006-2007. Id.* at n.4. Plaintiffs further asserted that the IHO had the discretion to determine when the District's violation of IDEA occurred – *i.e.,* it could have been

late in the summer of 2006 instead of earlier – in determining whether the parents were entitled to reimbursement for WINSi. *Id.* at 360. Finally, Plaintiffs asserted that "the evidence and arguments about the district's failure to hold an IEP meeting at the end of the 2005-2006 school year and at the beginning of the 2006-2007 school year are the same. . . . If the [parents] were required to endure another expensive due process hearing on the district's denial of FAPE for the 2006-2007 school year with the same evidence and arguments as the due process hearing that has just concluded, they would be prejudiced by having to repeat the hearing with identical evidence and arguments to only arrive at the same conclusion! The fact that the district may want another bite at the apple does not warrant a finding of error on this basis." *Id.* at 361.

A thorough review of the record establishes beyond any doubt that Plaintiffs failed to assert a claim that the School District denied FAPE to Tyler in 2006-2007. Likewise, they failed to make that argument in support of their claim for reimbursement of the WINSI fees. Instead, they premised their claim upon arguments that the School District denied FAPE to Tyler in 2005-2006 or denied FAPE by failing to convene an IEP meeting after May 23, 2006. Those arguments are insufficient, as a matter of law, to establish entitlement to the relief they sought. *See, e.g., Thompson R-2 Sch. Dist.,* 540 F.3d at 1148. Accordingly, Plaintiffs failed to properly assert a claim for reimbursement of WINSi costs, and have failed to meet the first component of the exhaustion test.

### ii.     Did Plaintiffs Present Evidence Necessary to Support the Reimbursement Claim?

In order to meet the second component of the exhaustion test set forth above, Plaintiffs must have presented evidence necessary to support their claim for reimbursement of WINSi fees to both the IHO and the ALJ. As explained above, the evidence necessary to support the claim related to whether Tyler was denied FAPE in 2006-2007. Plaintiffs

asserted, in their Response Brief on Appeal to the ALJ, that the evidence relating to denial

of FAPE in 2005-2006 was "the same" as that required to prove denial of FAPE in 2006-

2007.  *Administrative Record* [#22] at 361.  This argument lacks merit.  In order to show

that the School District failed to provide FAPE to Tyler in 2006-2007, Plaintiffs were

required to establish that the alternative placements offered by the School District in the

summer of 2006 were inappropriate to meet his needs.  *See, e.g., Florence County Sch.*

*Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).  That evidence was substantively different from

the evidence offered to show whether the School District provided FAPE to Tyler in 2005-

2006.  In fact, Plaintiffs offered no evidence regarding the propriety of the 2006-2007

placements suggested by the School District. The record indicates that instead, Plaintiffs

focused on excluding evidence relating to those placements.

- Plaintiffs did not offer into evidence the proposed IEP for the 2006-2007 school year, or any documents regarding the alternate placements suggested for Tyler's 2006-2007 school year by the School District.  *Administrative Record* [#22] at Plaintiffs' Exhibits 1-38.  Plaintiffs merely offered Plaintiffs' counsel's conclusory assertions that the School District had "fail[ed] to propose an appropriate alternative placement" and that the parents did "not think that Flatiron Academy is an appropriate placement for Tyler."  *Id.* at Plaintiffs' Exhibits 15, 35; *see also* Plaintiffs Exhibits 1-38.

- Plaintiffs' Trial Brief, filed with the IHO, stated that Plaintiffs "expect to elicit ample evidence that WINSi is an appropriate placement, and that Tyler is making gains."  The Trial Brief makes no mention of any evidence to be offered about the impropriety of the School District's suggested alternate placements for the 2006-2007 school year. *Administrative Record* [#22] at 679.  The Transcript of the Due Process Hearing confirms that Plaintiffs offered no such evidence.

- During the Due Process Hearing, Plaintiffs called the School District's Executive Director of Student Services, Mary Sires, as a witness and

examined her about the May 23, 2006 IEP meeting and the subsequent discussion of possible placements for Tyler for 2006-2007. Sires' testimony included no substantive information about the propriety of these placements, aside from the fact that one of them "turned out to not even accept students Tyler's age." Id. at Transcript, p. 679-709. On examination of Sires by the School District, the names of the alternate placements were put into evidence, but Plaintiffs' counsel objected to the School District's attempt to elicit testimony about why the alternate placements were appropriate for Tyler. *Id.* at 714. The IHO sustained the objection, but eventually allowed Sires to testify that the District "had other options for Tyler to attend different placements that were appropriate for him," without permitting any evidence as to the programs offered by those alternate placements or how they could meet the goals and objectives of Tyler's IEP. *Id.* at 715-718. The School District also called Sires as its witness during presentation of the defense case. When she began to testify about other placements that offered more therapeutic services for Tyler, Plaintiffs' counsel objected to the testimony. Her objection was sustained by the IHO. *Id.* at 739.

- During the Due Process Hearing, the School District elicited testimony from Sires that it was ready, willing and able to modify Tyler's IEP at the May 23, 2006 meeting and to provide FAPE to Tyler in 2006-2007. However, again no evidence was presented about the programs offered by the suggested alternate placements or how those programs would meet the revised IEP's goals and objectives. *Id.* at 745-746.

- During the Due Process Hearing, Plaintiffs' attorney argued in her rebuttal closing argument that the costs of alternate placements suggested by the School District were irrelevant. She stated: "No proof was ever offered that those other placements were appropriate for Tyler's needs." *Id.* at 886-887. This statement erroneously suggested that the School District had the burden of proving that the alternate placements were appropriate for Tyler, instead of the parents being required to prove that the alternate placements were not appropriate.

- Plaintiffs' Proposed Findings of Fact, Conclusions of Law and Order submitted to the IHO contains only one reference to evidence presented at the Due Process Hearing identifying "several placement options" which were discussed for the 2006-2007 school year, but no references to evidence about the propriety of those placement

options.  *Id.* at 630.  The same pleading contains multiple proposed factual findings about the propriety of WINSi as a placement for Tyler. *Id.* at 630-635.

- The School District's Proposed Findings of Fact, Conclusions of Law and Order indicates that it apparently belatedly recognized the importance of the issue regarding whether it had offered and could provide FAPE to Tyler in 2006-2007.   The pleading contained a proposed finding of fact to the effect that the School District was "ready, willing and able to provide the student with FAPE at an appropriate placement in the least restrictive environment upon his return to one of the [School District's] schools or placements."  *Id.* at 544.  In a portion of the proposed Order entitled "Additional Findings of Fact and Conclusions of Law Only Necessary If There Has Been a Denial of FAPE at Frederick Elementary School During the 2005-2006 School Year," the School District presented a one paragraph proposed finding of fact containing conclusions about alternate placements, despite the lack of any specific evidence about their propriety for Tyler.  That paragraph read, in its entirety:

> The Respondent has available other appropriate placements for the Student, either in a district school or by contract with other educational programs, that can provide the agreed upon additional therapeutic services, meet the Students' needs, and meet his IEP Goals and Objectives. The Respondent provided the Petitioner with these options at a meeting on May 23, 2006 following the IEP meeting on that same day.  Although one option (Reflections for Youth) was determined to be for students older than the Student, the other options (Burlington Elementary, Flatiron Academy, the Littler Center, and Cleo Wallace) were available to the student.  Each of these placements is less restrictive than the WINSi program.  *Id.* at 547.

Further, the School District presented a proposed conclusion of law that "FAPE could have been provided at a number of locations available to the District, including Flatiron Academy, Littler Center, Cleo Wallace or Burlington Elementary."  *Id.* at 548.

- The *School District* asserted on appeal to the ALJ that "the IHO erred in excluding evidence regarding the appropriateness of the schools

offered to the parents by the District." *Id.* at 477, 444. Plaintiffs made no argument on appeal relating to evidence regarding the alternate placements. *Id.* at 59-97.

- The parties agreed not to present new evidence to the ALJ. *Id.* at 202.

- The School District argued on appeal that "the provision of FAPE during the 2006-2007 school year was simply not addressed by the parties and not an issue in the hearing." *Id.* at 225. According to the School District, "the 2006-2007 school year was purposefully *not* discussed, as it had been determined by the IHO that it was outside the scope of the issues presented. Not once during the hearing did Parents' counsel claim that there was a failure to provide FAPE during the 2006-2007 school year (by reason of the May 23, 2006 IEP meeting or for any other reason). No witness testified that FAPE was denied in 2006-2007 and no witness testified that FAPE was denied due to the District's failure to reschedule an IEP meeting prior to the Parents' unilateral withdrawal of the Student from the District. In fact, no evidence relating to the 2006-2007 school year was allowed other than to permit the Parents the opportunity to attempt to demonstrate that WINSi was an appropriate placement in the event the IHO found that FAPE was denied during the 2005-2006 school year." *Id.* at 224-225 (emphasis in original; internal citations omitted). The School District argued that the IHO made several evidentiary rulings that precluded presentation of evidence regarding the School District's ability to provide FAPE to Tyler in 2006–2007. *Id.* at 225-226.

- Plaintiffs' Brief on Appeal to the ALJ contains no mention of evidence regarding whether the School District could provide FAPE to Tyler in 2006-2007. *Id.* at 239-296.

- As mentioned *supra*, Plaintiffs argued, in their Response Brief on Appeal, that the evidence relating to the alleged denial of FAPE in 2005-2006 was "the same" as the evidence relating to denial of FAPE in 2006-2007. *Id.* at 361. This argument fails to account for the need for evidence about the programs offered at the alternate placements for the 2006-2007 school year and whether they could meet the goals and objectives of Tyler's revised IEP.

Again, a thorough review of the record establishes beyond any doubt that Plaintiffs

failed to introduce evidence relating to the School District's denial of FAPE to Tyler in 2006-2007. Instead, Plaintiffs focused on excluding such evidence. Accordingly, Plaintiffs failed to present evidence regarding the claim for denial of FAPE in 2006-2007, and have failed to meet the second component of the exhaustion test.

The ALJ recognized that in order to obtain reimbursement of WINSi fees, Plaintiffs' bore the burden of proving that FAPE was denied to Tyler in 2006-2007 by offering evidence that the School District's alternate placements were inappropriate, and that they failed to sustain their burden. *Administrative Record* [#22] at 419-420. The ALJ found that:

> a decision to pay for the cost of public school requires a showing by Tyler's representatives that the School District failed to offer FAPE. As it is Tyler's representatives that seek the relief of payment for a private school, they have the burden of proof. . . .In this case, Tyler's representatives have failed to prove that Flatiron Academy, or any of the other placements offered by the School District would not have provided FAPE. That the placement for 2005-2006 was not successful is not the issue. Properly, the School District recognized that a different approach was necessary for the next year and offered these new placements. *In order to require the School District to pay for WINSi, Tyler's representatives were required to show that these placements were inadequate.*

*Id.* at 419-420 (emphasis provided).

I agree. Not only did Plaintiffs fail to frame the claim properly in order to obtain reimbursement of the WINSi costs, but they also failed to present necessary evidence relating to the claim. In these circumstances, the record is not adequate to meet the objectives of the administrative exhaustion requirement, because exercise of agency discretion and expertise was necessarily curtailed, an incomplete factual record was developed prior to Court review, and the agency was not provided with a meaningful

opportunity to correct any error.  See *McQueen,* 488 F.3d at 868.

### iii.     Were Plaintiffs Prevented From Properly Exhausting Their Administrative Remedies?

A comprehensive review of the administrative record reveals actions taken by both the IHO and the School District which contributed to the creation of a record devoid of any meaningful analysis of the 2006-2007 FAPE issue.  As indicated above, the IHO made at least three Orders which framed the issues and evidence in a way that excluded consideration of FAPE in the 2006-2007 school year.  First, his Supplemental Pre-Hearing Order failed to list denial of FAPE to Tyler in 2006-2007 as one of the issues to be determined in the Due Process Hearing.  *Administrative Record* [#22] at 685.  Second, he excluded testimony regarding the propriety of other placements on two occasions during the Due Process Hearing.  *Id.* at 714, 739.  In addition, the School District  repeatedly asserted that consideration of the issue of whether FAPE had been offered to Tyler for the 2006-2007 school year was either unnecessary or inappropriate.  *Id.* at 196, 219, 225-26, 441, 444, 477, 531, 644-651; Transcript at p. 877.  The question therefore arises whether the acts of the IHO or School District prevented Plaintiffs from properly exhausting their administrative remedies such that they should be excused from doing so.

The analysis of this issue must begin by recognizing that there is no legal authority suggesting that failure to exhaust administrative remedies can be excused based upon the circumstances present here.  That is, the Tenth Circuit has previously held that the failure to exhaust pursuant to the IDEA may be excused in cases where exhaustion would be futile or the relief provided would be inadequate.  *See, e.g., McQueen*, 488 F.3d at 874

(recognizing that "[e]xhaustion is not required . . . where it would be futile or fail to provide adequate relief"); *Romer*, 992 F.2d at 1044 (holding that exhaustion pursuant to the IDEA is not required where it would provide inadequate relief or be futile). However, Plaintiffs have not argued that they failed to exhaust due to futility or inadequate relief, and further, there is caselaw suggesting that Plaintiffs should be held accountable for the failure to exhaust which occurred here. Therefore, both the law and the procedural facts at issue in this case compel such a result.

It is beyond dispute that Plaintiffs had the burden of proof regarding their claim for reimbursement of WINSi costs. *See, e.g., Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005) (holding that "[t]he burden of proof in an administrative hearing challenging an IEP is properly placed on the party seeking relief"); *Johnson v. Indep. Sch. Dist No. 4 of Bixby*, 921 F.2d 1022, 1026 (10th Cir. 1990). That burden necessarily entailed properly framing the issue for the fact-finders' consideration and presenting evidence to support their claim. *See id.* Plaintiffs' Due Process Complaint squarely framed their reimbursement claim as based upon the School District's alleged failure "to provide Tyler with FAPE at Frederick Elementary School," instead of upon an alleged denial of FAPE for the 2006-2007 school year. *Administrative Record* [#22] at 716. In addition, the administrative record is devoid of any suggestion that Plaintiffs demanded that the IHO (or ALJ) consider the issue of whether the School District denied FAPE to Tyler in 2006-2007. Moreover, the IHO's exclusion of evidence pertaining to alternate placements *was made at Plaintiffs' request. Id.* at 714, 739. Finally, the School District's repeated argument that the issue of

whether FAPE was offered in 2006-2007 was irrelevant was in no way binding upon Plaintiffs or constrictive of their right to argue to the contrary. At all times Plaintiffs were free to disagree, but in fact explicitly chose not to do so. Instead, they eventually asserted that the IHO had "discretion" to determine when the School District's violation of IDEA occurred. *Id.* at 360. This contention is not supported by any Tenth Circuit legal authority.

Taking all of the above into consideration, neither the IHO's orders nor the School District's approach should somehow excuse Plaintiffs' failure to carry their burden of proof. *See, e.g., Schaffer ex rel. Schaffer*, 546 U.S. at 62; *Johnson*, 921 F.2d at 1026.

### iv. Given the IHO's and ALJ's Rulings Regarding FAPE in 2006-2007, Should Plaintiffs' Failures to Assert the Proper Claim and to Present Necessary Evidence Be Excused?

Despite the fact that Plaintiffs' reimbursement claim failed to assert a denial of FAPE in 2006-2007, and despite the fact that Plaintiffs failed to offer evidence about the impropriety of alternate placements suggested by the School District for 2006-2007, both the IHO and the ALJ made legal rulings about whether the School District had offered FAPE to Tyler in 2006-2007.[3] The question therefore arises whether the issuance of findings regarding FAPE in 2006-2007 excuses Plaintiffs' failure to properly present both the claim and evidence supporting it.

The answer must be in the negative. First, there is no legal authority to suggest that

---

[3] The IHO found that "FAPE was no longer provided after the IEP meeting of May 23, 2006, and subsequently on to the present. However [sic], the events of the May 23, 2006 IEP meeting and events which transpired subsequent to that meeting show that FAPE has not been provided to the student for the 2006-2007 school year." *Administrative Record* [#22] at 437. The ALJ "reverse[d] the IHO's decision that [FAPE] was not provided for the 2006-2007 school year." *Id.* at 421.

the duty to create an appropriate administrative record is excused when the administrative fact-finders make required findings based on an incomplete record.  Although in this case the fact-finders eventually made findings about whether the School District offered to provide FAPE to Tyler in 2006-2007 because they recognized that the law required them to do so, those findings were made on the basis of an impaired record.  The condition of the record was the result of Plaintiffs' failure to understand and carry their burden of proof. Under these circumstances, the making of required findings on a threadbare record cannot remedy the Plaintiffs' failure to create the appropriate record necessary to the making of such findings in the first place.  Second, as explained *supra*, administrative exhaustion under the Act requires that all three components of the exhaustion test — proper presentation of claims, proper presentation of supporting evidence, and issuance of appropriate rulings — are met.  Superficial, arbitrary or fortuitous satisfaction of the third component alone does not excuse failure to satisfy the other two components, because the objectives behind the administrative exhaustion requirement remain unmet.    *See, e.g., McQueen*, 488 F.3d at 873, *Cudjoe ex rel. Cudjoe*, 297 F.3d at 1064-65, *Romer*, 992 F.2d at 1044.

Accordingly, because Plaintiffs have failed to administratively exhaust their claim for reimbursement of WINSi fees, I respectfully **RECOMMEND** that the Motion be **GRANTED.**

### 4.    Supplementation of the Administrative Record

Finally, in light of my recommendation that Plaintiffs' Second Claim for Relief be dismissed for failure to exhaust administrative remedies, I revisit my earlier Orders allowing

supplementation of the administrative record.  *Order* [Docket No. 30; Filed January 28, 2008] and *Order* [Docket No. 38; Filed May 12, 2008].  Both Orders were based on an explicit finding that the Second Claim for Relief necessarily depended upon a denial of FAPE in 2006-2007, and that the supplemental evidence proffered was relevant to that issue. Because I now recommend that the Second Claim for Relief be dismissed, I further recommend that the supplemental evidence not be admitted for purposes of determining the remaining claims in the case.

## V.    Conclusion

As set forth above, I respectfully **RECOMMEND** that  **Defendant's Partial Motion to Dismiss** [Docket No. 41; Filed July 3, 2008] be **GRANTED** and:

(1) Plaintiffs' alleged "claim" that the School District failed to provide prior written notice pursuant to 20 U.S.C. § 1415(c)(1) **BE DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies; and

(2) that Plaintiff's Second Claim for Relief be **DISMISSED WITHOUT PREJUDICE**, for failure to exhaust administrative remedies.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *In re Key Energy Resources Inc.*, 230 F.3d 1197,

1199-1200 (10th Cir. 2000).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

Dated:  February 2, 2009