IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-01094-PAB-KLM

TYLER V., by and through his parents and next friends,
DESIREE AND ROBERT V.,

    Plaintiff,

v.

ST. VRAIN VALLEY SCHOOL DISTRICT NO. RE-1J,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on defendant's motion for judgment on the Administrative Record [Docket No. 71]. Plaintiff, through his parents ("the Parents"), brought claims against the District under the Individuals with Disabilities Education Act ("IDEA" or the "Act"). The IDEA provides students with disabilities the right to a "free appropriate public education," or a "FAPE," designed to meet their needs. *See* 20 U.S.C. § 1400(d)(1)(A). Plaintiff contends that the District did not offer a FAPE for him in 2005-2006 and, therefore, that he is entitled to reimbursement of his private school tuition expenses incurred during the 2006-2007 school year. In its motion, defendant seeks judgment on the Administrative Record ("A.R.") filed with the Court. The motion is fully briefed and ripe for disposition.[1]

---

[1] The Parents filed an unopposed motion for oral argument [Docket No. 75]. The Court finds that oral argument will not materially assist in the resolution of this matter, which can be resolved on the briefs and administrative record filed by the parties.

## I. BACKGROUND[2]

Plaintiff, a school-age child with disabilities, was enrolled at Frederick Elementary School within defendant St. Vrain Valley School District No. RE-1J ("the District") for the 2005-2006 school year pursuant to the individualized education program ("IEP") established on August 12, 2005. Near the end of that school year, during which the IEP was amended, plaintiff, his parents, and the District determined that plaintiff would need a more "therapeutic placement" than Frederick Elementary for the 2006-2007 school year. Although discussions between the parties continued over the summer, they did not agree on a placement for plaintiff. The Parents eventually rejected the District's suggestion that plaintiff attend Flatiron Academy and instead enrolled him at the Western Institute for Neurodevelopmental Studies and Intervention ("WINSi"), a private school in Boulder, Colorado.

On September 6, 2006, plaintiff filed a due process complaint against the District seeking reimbursement for the cost of WINSi. A due process hearing was held on November 7-8 and 13-14, 2006. On November 27, 2006, the independent hearing officer ("IHO") issued an order ruling that the District provided a FAPE for plaintiff in 2005-2006, but that a FAPE was not provided after a May 23, 2006 meeting of plaintiff's IEP team. As a result, the IHO ruled that the District failed to provide plaintiff a FAPE for the 2006-2007 school year and thus ordered that the District pay for 36 weeks of plaintiff's education at WINSi. *See* A.R. at 24. Both sides appealed to a state level

---

[2]In a Recommendation of United States Magistrate Judge filed on February 2, 2009 [Docket No. 56], the magistrate judge provided a detailed recitation of the factual and procedural history of this case. Therefore, the Court provides only a brief summary of the background of this case which now presents a purely legal question.

review officer, which in Colorado is an administrative law judge ("ALJ") in the Office of Administrative Courts. On February 27, 2007, the ALJ issued a decision that affirmed the IHO's ruling that the District provided a FAPE to plaintiff in 2005-2006 and reversed the ruling that the District failed to provide a FAPE to plaintiff in 2006-2007. A.R. at 420.[3]

Plaintiff then initiated this action, bringing three claims: (1) a challenge to the IHO and ALJ's conclusion that a FAPE was provided during the 2005-2006 school year, Docket No. 1 at 16-18, ¶¶ 83-93; (2) a claim for reimbursement of the costs of WINSi for the 2006-2007 term, *id.* at 18-22, ¶¶ 94-113; and (3) a claim for reimbursement of the costs of certain independent educational evaluations ("IEEs"), *id.* at 22-24, ¶¶ 114-124. In a March 29, 2010 order [Docket No. 69], the Court concluded that, to the extent plaintiff's reimbursement claim depends on the existence of facts that occurred after May 23, 2006, plaintiff failed to present this issue to the IHO and therefore failed to exhaust his administrative remedies. Consequently, the Court ruled that allegations in the complaint that pertain to events after May 23, 2006 will not be considered in relation to the second claim.

Thereafter, defendant filed the present motion, arguing that the administrative decision that the District provided a FAPE during the 2005-2006 school year should be affirmed.[4] Plaintiff responds that it was legal error for the ALJ to conclude both that

---

[3]The Parents have previously made clear that they "have brought no claim for relief based on denial of FAPE for the 2006-2007 school year . . . ." Docket No. 46 at 4.

[4]The District also seeks to have the decision to deny plaintiff reimbursement for IEEs upheld.

plaintiff did not progress academically during the 2005-2006 school year and that the District provided a FAPE during that year.

## II. DISCUSSION

The IDEA provides students with disabilities the right to a FAPE designed to meet their needs. *See* 20 U.S.C. § 1400(d)(1)(A). The determination of whether a FAPE has been provided turns in large part on the sufficiency of the IEP for each disabled child. *See, e.g.*, *A.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 675 (4th Cir. 2007) ("A school provides a FAPE by creating an [IEP] for each child."). Challenges to the adequacy of an IEP can take two forms, i.e., arguments that the IEP was procedurally deficient or that it was substantively deficient. *See Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 726 (10th Cir. 1996). Here, the Parents have not challenged the IEP's compliance with IDEA procedures, but rather focus on whether, substantively, their child's IEP was sufficient to provide a FAPE during 2005-2006.[5]

A FAPE is "hardly self-defining." *Thompson R2-J School Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1148 (10th Cir. 2008). To determine whether a FAPE was provided to plaintiff during the 2005-2006 school year, the Court "must ask . . . whether [the] . . . IEP was 'reasonably calculated to enable [him] to receive educational benefits.'" *Thompson*, 540 F.3d at 1148-49 (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)). "If the IEP was so calculated, the school district can be said to have

---

[5]*Cf. Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982) ("[T]he congressional emphasis upon full participation of concerned parties throughout the development of the IEP, as well as the requirements that state and local plans be submitted to the Secretary for approval, demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.").

provided a FAPE; if not, then not." *Id.* at 1149.[6]

Plaintiff's parents, as the parties challenging the IEP, bear the burden of proof to show it was deficient. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005). In determining whether they have met their burden, the Court "shall receive the records of the administrative proceedings;" "shall hear additional evidence at the request of a party;" and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "[T]hough the statute specifies that review is *de novo*, the Supreme Court has interpreted the requirement that the district court receive the administrative record to mean that 'due weight' must be given to the administrative proceedings, the fact findings of which are considered prima facie correct." *Thompson*, 540 F.3d at 1150 (citation and quotation marks omitted). The Tenth Circuit describes this "somewhat unique standard of review" as a "modified *de novo* standard." *Id.* at 1149 (citations and quotation marks omitted). Here, however, the Parents do not challenge the material fact that is central to their

---

[6]In certain circumstances, if a FAPE has not been made available, parents are entitled to enroll their children in private school and seek reimbursement of the costs. Specifically, the IDEA provides:
> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C)(ii). Furthermore, the IDEA requires that disabled children be educated in the "least restrictive environment" ("LRE"). 20 U.S.C. § 1412(a)(5)(A). In other words, "[t]o the maximum extent appropriate," disabled children should be educated in public school classrooms alongside children who are not disabled. 20 U.S.C. § 1412(a)(5)(A).

5

argument, i.e., the ALJ's factual finding regarding the lack of progress exhibited by Tyler during the 2005-2006 school year, but rather make a purely legal argument regarding the application of the IDEA to that finding. The Court reviews that legal challenge *de novo*. *See O'Toole ex rel. O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233*, 144 F.3d 692, 699 (10th Cir. 1998).[7]

> The legal question presented by plaintiff is
>
> whether the [ALJ] holding should stand that FAPE was provided for Tyler for the 2005-06 school year, despite the fact that the ALJ found that Tyler received no positive academic or non-academic benefits from his August 12, 2005 IEP. This issue lies at the heart of Plaintiff's case and is the keystone of both the First and Second Claims for Relief.

Docket No. 74 at 7 (citations and emphasis omitted). While plaintiff's parents request that the Court find as a matter of law that an IEP cannot be both reasonably calculated to achieve an educational benefit and fail to do so, controlling law interpreting the IDEA clearly provides otherwise. Quite simply, the Court may not, as plaintiff requests, assess the IEP "exclusively in hindsight." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 992 (1st Cir. 1990) ("An IEP is a snapshot, not a retrospective."). Rather, when assessing the adequacy of an IEP, the relevant question is "not whether the IEP will guarantee some educational benefit, but whether it is reasonably calculated to do so." *Thompson*, 540 F.3d at 1149. Therefore, "'the measure and adequacy of an IEP can only be determined as of the time it is offered to the student." *Id.* (quoting *O'Toole*, 144

---

[7]*Cf. Thompson*, 540 F.3d at 1150 n.6 (noting that, while the "modified *de novo*" standard of review "represents the distinct minority position among circuit courts" and that "[e]n banc reconsideration of [the] standard of review may well be appropriate," the standard of review would not effect the outcome in the case because its "disagreement with the district court . . . is limited solely to the legal question [of] what consequences follow under IDEA's terms from its factual findings")

6

F.3d at 701-02); *see S.S. v. Howard Road Academy*, 585 F. Supp. 2d 56, 66 (D.D.C. 2008) (citing, *inter alia*, *Thompson*, 540 F.3d at 1149)); *see also M.S. ex rel. Simchick v. Fairfax County School Bd.*, 553 F.3d 315, 326-27 (4th Cir. 2009); *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 530 (3d Cir. 1995); *Roland*, 910 F.2d at 992 ("In striving for 'appropriateness,' an IEP must take into account what was, and was not, objectively reasonable . . . at the time the IEP was promulgated.").

With that said, the Tenth Circuit in *O'Toole* made clear, "[w]hile [courts are to] evaluate the adequacy of the [IEP] document from the perspective of the time it [was] written, the implementation of the program is an on-going, dynamic activity, which obviously must be evaluated as such." *O'Toole*, 144 F.3d at 702. That being the case, "a school district can[not] ignore the fact that an IEP is clearly failing, nor can it continue to implement year after year, without change, an IEP which fails to confer educational benefits on the student." *Id.* The Parents, however, point to no evidence, other than a lack of progress demonstrated at the end of the school year, that the IEP was inadequately designed or implemented. Nor do they contend that the District ignored indications that the IEP was clearly failing as it was being implemented.[8] "This is not the usual IDEA dispute where the student and parents allege that their concerns have gone unheeded or unaddressed in the IEP process." *Thompson*, 540 F.3d at 1153-54. Instead, the Parents focus exclusively on the retrospective implication of Tyler's failure to achieve sufficient progress in the goals identified in his IEP. Even accepting that no

---

[8]*Cf.* A.R. at 1953 (where, in a December 13, 2005 letter to the District, Tyler's mother "stress[ed] that [her] husband and [she] have the utmost confidence in this IEP team and we have been very happy with Tyler's placement at Frederick Elementary School and the progress Tyler has made so far.").

progress was made during the year,[9] the IEP cannot be deemed inadequate on that ground alone as an IEP provides no guarantee of progress. In other words, contrary to the Parents' argument, an IEP may have been reasonably calculated to achieve some benefit, yet fail to do so in the end. *See Thompson*, 540 F.3d at 1151 ("Congress established procedures to guarantee disabled students access and opportunity, not substantive outcomes.") (citing *Rowley*, 458 U.S. at 192; Dixie Snow Huefner, *Judicial Review of the Special Educational Program Requirements Under the Education for All Handicapped Children Act: Where Have We Been and Where Should We Be Going?*, 14 Harv. J.L. & Pub. Pol'y 483, 495 (1991) ("If the IEP were a contract obligating the school to achieve the specified goals and objectives, districts would set the most minimal of goals.")).

That is not to say that courts must disregard academic progress or regression in assessing an IEP. *See O'Toole*, 144 F.3d at 707 ("[W]e must . . . consider whether the IEPs were reasonably calculated to provide a FAPE and whether [the student] actually received educational benefits."). It is, however, but one factor. *See M.S.*, 553 F.3d at 327 ("To be sure . . . progress, or the lack thereof, while important, is not dispositive." (citing *Rowley*, 458 U.S. at 207 n. 28 ("[T]he achievement of passing marks and advancement from grade to grade will be *one* important factor in determining educational benefit." (emphasis added in *M.S.*)). The Parents do not challenge the IEP on grounds it was substantively deficient at the time of its drafting or in the manner in

---

[9]The District points to evidence that Tyler did show progress in the goals identified in his IEP during 2005-2006. The Court will not review the ALJ's conclusion on that issue because, even if Tyler failed to show any progress, that is insufficient on its own to show the inadequacy of the IEP in retrospect.

which it was implemented.  Therefore, even accepting plaintiff's argument that the Court can engage in a measure of retrospective analysis of the IEP, there is no authority that would permit the Court to engage in an *exclusively* retrospective analysis. *See O'Toole*, 144 F.3d at 701 ("Neither the statute nor reason countenance 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement.") (citations and quotation marks omitted).  To do so would be to turn the IDEA's guarantee of "access and opportunity" into a guarantee of "substantive outcomes." *Thompson*, 540 F.3d at 1151.  The IDEA, however, "does not require that schools attempt to maximize a child's potential, or, as a matter of fact, guarantee that the student actually make any progress at all.  It requires only that the student be provided with an IEP that is reasonably calculated to provide educational benefit. . . ." *CJN v. Minneapolis Pub. Sch.*, 323 F.3d 630, 642 (8th Cir. 2003); *see S.S.*, 585 F. Supp. 2d at 71 ("[W]hen judged prospectively, rather than with the benefit of hindsight, the evidence in the record supports the conclusion that the . . . IEP was reasonably calculated to enable him to receive a meaningful educational benefit.  This is the relevant test, not whether, *ex post*, [the student] can be deemed to have actually derived educational benefits."). The Parents, by failing to address anything other than the ultimate lack of progress, have not met their burden of showing that the IEP was not reasonably calculated to provide their child with some educational benefit.

The Parents also seek reimbursement of the cost of an independent educational evaluation ("IEE") they arranged for plaintiff in the spring of 2006.  As was their right, *see* 34 C.F.R. § 300.502(a), the Parents obtained an IEE and admit that, upon

presenting the District with the results, the District agreed with the IEE's conclusion that Tyler required more therapeutic services in the upcoming academic year. Docket No. 71 at 11, ¶ 5; Docket No. 74 at 6, ¶ 5; *see* 34 C.F.R. § 300.502(c) ("If the parent obtains an independent educational evaluation at public expense or shares with the public agency an evaluation obtained at private expense, the results of the evaluation . . . [m]ust be considered by the public agency, if it meets agency criteria, in any decision made with respect to the provision of FAPE to the child . . . ."). To receive reimbursement, however, the IEE must have been performed due to a disagreement "with an evaluation obtained by the public agency." 34 C.F.R. § 300.502(b)(1); *see R.L. ex rel. Mr. L. v. Plainville Bd. of Educ.*, 363 F. Supp. 2d 222, 234 (D. Conn. 2005) (concluding that, because the federal regulations provide an IEE at the public's expense if a parent disagrees with a district's IEE, reimbursement was not appropriate where the parents sought the IEE "as an additional source of information . . . , not because they disagreed with any of the defendant's evaluations"). Here, the Parents do not contend that the IEE was performed to rebut a District evaluation. *See* Docket No. 71 at 11, ¶ 4; Docket No. 74 at 6, ¶ 4. Therefore, the Court finds no basis upon which to grant the Parents' request for reimbursement.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's claims are DISMISSED. It is further

**ORDERED** that the District's counterclaims, which have been abandoned, are DISMISSED. It is further

**ORDERED** that the unopposed motion for oral argument [Docket No. 75] is DENIED.  It is further

**ORDERED** that this matter is closed.


DATED March 21, 2011.

                                          BY THE COURT:

                                          s/Philip A. Brimmer
                                          PHILIP A. BRIMMER
                                          United States District Judge